UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GLORIA GORE,** | Civil Action No. 1:13-CV-00233 (BJR) |
| Plaintiff, | |
| v. | |
| **DISTRICT OF COLUMBIA,** | MEMORANDUM OPINION |
| Defendant. | |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13]**

## I. INTRODUCTION

Before the Court are the parties' cross-motions for summary judgment [13] and [15]. Plaintiff Gloria Gore brings this action under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.*, on behalf of Y.G., her sixteen-year-old granddaughter. Plaintiff alleges that the District of Columbia Public Schools ("DCPS") denied Y.G. a free and appropriate public education ("FAPE") when it changed Y.G.'s assigned school from The Monroe School to one of the High Road schools, and in doing so, failed to convene a multidisciplinary team meeting to discuss the change, or otherwise include Plaintiff in the decision-making process. Upon consideration of the parties' arguments, the relevant case law, and the entire record, the Court denies the Plaintiff's motion for summary judgment and grants the Defendant's motion for summary judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Gloria Gore is the legal guardian and grandmother of Y.G., a student with specific learning disabilities. Administrative Record ("AR") at 3, 5. In September 2010, a

hearing officer determined that DCPS denied Y.G. a FAPE when it failed to act in accordance with Y.G.'s individualized education plan ("IEP"), developed in 2009, and prior hearing officer determinations requiring that Plaintiff be provided with written progress reports and that Y.G's IEP include measurable annual goals. *Id.* at 18, 23-24. Noting that DCPS had "repeatedly failed to adhere to the requirements of the law[,]" the hearing officer ordered Y.G.'s immediate placement at The Monroe School ("Monroe"),[1] and ordered that all expenses be paid by DCPS. *Id.* at 24. In addition, the hearing officer "effectively removed" from DCPS the "right to dictate what services will or will not be provided." *Id.* Specifically, the September 2010 HOD provided that:

> If the Student is, for any reason but for graduation or aging out, no longer able to attend Monroe School, the Student will again become the direct responsibility of the Respondent and all of the procedures and obligations under IDEA will become applicable. Nothing in this order requires placement at another non-public placement, unless the IEP team determines that such a placement is necessary for the Student.

*Id.*

Subsequently, on two separate occasions, DCPS attempted to transfer Y.G. from Monroe to another nonpublic school. In response, Plaintiff filed two administrative due process complaints in December 2011 and February 2012, challenging Y.G's reassignment from Monroe to Spectrum Academy at Roosevelt High School. *Id.* at 69-71, 75-78. The hearing officer found in favor of the Plaintiff on both occasions, finding that the September 2010 HOD remained in effect and that DCPS was required to provide transportation services for Y.G. to Monroe. *Id.* at 70, 79.

---

[1] Monroe is a nonpublic school in the District of Columbia that provides services to students with disabilities, including specific learning disabilities. AR at 84.

On August 22, 2012, DCPS issued a Prior Written Notice[2] indicating a change in Y.G's location of services and that Y.G. would be transferred from Monroe to one of the High Road Schools ("High Road"). *Id.* at 87-89. Plaintiff filed an administrative due process complaint on September 14, 2012, alleging that DCPS denied Y.G. a FAPE by changing her assigned school from Monroe to High Road and failing to include Plaintiff in the decision-making process that resulted in that change. *Id.* at 105-114.

In November 2012, an independent hearing officer held a due process hearing. The hearing officer focused on two issues in resolving Plaintiff's due process complaint: first, whether Y.G. was denied a FAPE when DCPS changed her educational placement and failed to include Plaintiff in the decision-making process regarding this change in placement, and second, whether DCPS changed Y.G.'s educational placement when it transferred Y.G. from Monroe to High Road, and whether that change in placement violated the September 2010 HOD. *Id.* at 5. With respect to the first issue, the hearing officer determined that DCPS did not deny Y.G. a FAPE because Y.G.'s transfer did not result in a change in her educational placement, and therefore, DCPS was not required to provide prior written notification to the Plaintiff. *Id.* at 9-10. With respect to the second issue, the hearing officer again concluded that DCPS did not violate the September HOD because there was no change in Y.G.'s educational placement. *Id.* at 11. The hearing officer also concluded that DCPS did not violate the September 2010 HOD. As the hearing officer reasoned, there was a justification for the transfer under the September HOD because it permitted DCPS to assume responsibility if, for any reason except graduation or aging out, Y.G. was no longer able to attend Monroe. In particular, the hearing officer found that

---

[2] Plaintiff states that she did not receive prior written notice from DCPS regarding Y.G.'s transfer to High Road and that "prior written notice was not received by [Plaintiff] or her counsel until staff at High Roads [*sic*] provided a copy of the notice in late August of 2012[.]" Pl.'s Mem. of P. & A. in Supp. of Mot. for Summ. J ("Pl.'s Mot.") at 4.

Monroe's failure to comply with the "requirements that its teachers be certified to provide specialized instruction and content area instruction in the District of Columbia[,]" provided a valid reason justifying DCPS' decision to change Y.G.'s location of services. *Id.*

Plaintiff filed a complaint under 20 U.S.C. § 1415(i)(2)(A) seeking review of the November 2012 hearing officer determination.

## III. ANALYSIS

### A. Standard of Review for IDEA Claims

"Congress enacted the IDEA 'to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living.'" *Petties ex rel. Martin v. District of Columbia*, 662 F.3d 564, 566 (D.C. Cir. 2011) (quoting 20 U.S.C. § 1400(d)(1)(A)). An IEP is the mechanism through which a student receives a FAPE under the IDEA. Individualized education programs are developed and implemented by a multidisciplinary team (MDT), or IEP team, that includes the parents of the student, a regular education teacher, a special education teacher, a representative from the local education agency (LEA) who will supervise the student's educational program, an individual that can interpret the evaluation results, other individuals with knowledge or expertise about the student, and, if appropriate, the student. *Id.* § 1414(d)(1)(B). Each IEP must include a statement of the student's current academic achievement levels, academic and functional goals, how the student's progress will be measured, special education services and supplementary aids, and the extent to which the student will participate in regular classroom activities and other activities with nondisabled students. *Id.* § 1414(d)(1)(A).

Under the IDEA, parties may "present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child[.]" *Id.* § 1415(b)(6)(A). Once a complaint is received, parties have an opportunity to participate in an impartial due process hearing, wherein a hearing officer must determine whether the student received a FAPE. *Id.* §§ 1415(f)(1)(A), (f)(3)(E)(i). Aggrieved parties may challenge a hearing officer's decision in federal court. *Id.* § 1415(i)(2)(A). After receiving and reviewing the administrative record,[3] as well as any additional evidence submitted by the parties, the reviewing court must "bas[e] its decision on the preponderance of the evidence," and grant the appropriate relief. *Id.* § 1415(i)(2)(C).

Where no additional evidence is presented by either party, "'a motion for summary judgment operates as a motion for judgment based on the evidence compromising the record.'" *D.K. v. District of Columbia*, 983 F. Supp. 2d 138, 144 (D.D.C. 2013) (quoting *Parker v. Friendship Edison Public Charter Sch.*, 577 F. Supp. 2d 68, 72 (D.D.C. 2008)). The party challenging the hearing officer's decision bears the burden of proof. *See, e.g.*, *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) ("[I]t is true that under our precedent 'a party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so.'" (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989))). "Under the IDEA, the hearing officer's decision is afforded 'less

---

[3] Contrary to Plaintiff's contention, Pl.'s Reply to the Def.'s Opp'n to the Pl.'s Mot. for Summ. J. & Its Opp'n to the Def.'s Mot. for Summ. J. ("Pl.'s Reply") at 4-5, parties are not required to submit a statement of undisputed materials facts in cases where "judicial review is based solely on the administrative record." LCvR 7(h)(2). *See also* LCvR 7(h) cmt. ("This provision recognizes that in cases where review is based on an administrative record the court is not called upon to determine whether there is a genuine issue of material fact, but rather to test the agency action against the administrative record. As a result the normal summary judgment procedures requiring the filing of a statement of undisputed material facts is not applicable.").

deference than is conventional in administrative proceedings.'" *District of Columbia v. Nelson*, 811 F. Supp. 2d 508, 511 (D.D.C. 2011) (quoting *Reid*, 401 F.3d at 521). However, judicial review is "by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities," but rather courts must give "due weight" to the determination by the hearing officer in the administrative proceedings under review. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist.*, *Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982).

### B. Cross Motions for Summary Judgment

Plaintiff argues that the hearing officer erred in concluding that Y.G.'s transfer from the Monroe School to High Road was a change in the "location of services" rather than a change in educational placement. Pl.'s Mot. at 6. Plaintiff relies principally on *Letter to Fisher*, 21 IDELR 992 (1994), a policy letter written by the former director of the U.S. Department of Education's Office of Special Education Programs (OSEP), to support her argument that the change in Y.G.'s assigned school from Monroe to High Road constituted a change in educational placement.[4] Plaintiff contends that Y.G.'s reassignment from Monroe to High Road constituted a change in education placement because it was a revision to Y.G.'s IEP in that it reduced the amount of specialized instruction mandated by Y.G.'s IEP -- in particular, the change from eleven-month extended school year ("ESY") services offered at Monroe to a ten-month school year at High Road -- and thus, constituted a "fundamental change in Y.G.'s education program." *Id.* at 7-9. Further, Plaintiff argues that the hearing officer was required to conduct an inquiry into whether Y.G. would be provided with the "same opportunities to participate in nonacademic and

---

[4] The factors outlined in *Letter to Fisher* include "whether the educational program set out in the child's IEP has been revised; whether the child will be able to be educated with nondisabled children to the same extent; whether the child will have the same opportunities to participate in nonacademic and extracurricular services; and whether the new placement option is the same option on the continuum of alternative placements." *Letter to Fisher* at 3.

extracurricular services at High Road[] as she had at the Monroe School," and failed to do so. *Id.* at 9. Finally, Plaintiff also argues that DCPS denied her the right to participate in the decision-making process due to DCPS's failure to convene a MDT team meeting to discuss Y.G.'s change in placement, and failed to provide her with prior written notice "adequate enough to explain why the District proposed removing Y.G. from the Monroe School to High Roads [*sic*]." *Id.* at 14.

Defendant argues that "DCPS maintained Y.G.'s education placement by reassigning her to attend High Road Academy from The Monroe School." Def.'s Mot. at 5. Defendant challenges Plaintiff's assertion that Y.G.'s IEP required ESY services, and argues that Y.G.'s re-assignment was in accordance with her (then-most recent) December 2011 IEP, which required "27.5 hours per week of specialized instruction outside of the general education setting," and did not require an ESY of eleven months. *Id.* at 2. Accordingly, Defendant contends that there was no fundamental change in Y.G.'s educational program and thus, DCPS was not required to provide prior written notice to Plaintiff regarding Y.G.'s reassignment from Monroe to High Road. Furthermore, Defendant contends that DCPS did not violate the September 2010 HOD by reassigning Y.G. from Monroe to High Road because the teachers at Monroe lacked the certifications required by law to teach special education and, therefore, Monroe was unable to implement Y.G.'s IEP. *Id.* at 8-10. Ultimately, Defendant argues that "moving [Y.G.] from a school that could not implement her IEP to a school that could implement her IEP *ensured* that she was receiving a FAPE, rather than denying her one." Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 5 ("Def.'s Reply").

After reviewing the record and controlling case law, the hearing officer concluded that there was no change to Y.G.'s educational placement because:

7

> (1) there was no change to the services required by Student's IEP, (2) [High Road] could implement Student's IEP by providing 27.5 hours/week of specialized instruction outside of general education, (3) both nonpublic schools provided services only to disabled students; therefore, the placement at [High Road] was the same on the continuum of alternative placements; and (4) at [High Road], Student would be serviced in a program specifically geared for students with a Specific Learning Disability.

AR at 10. The hearing officer also concluded that Y.G.'s IEP "did not mandate that Student have access to nonacademic and extracurricular activities." *Id.*

### i. Plaintiff Fails to Establish that DCPS Denied Student a FAPE

Although the IDEA does not include a definition for the term "educational placement," the D.C. Circuit has determined that a parent challenging a change in placement "must identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program in order for the change to qualify as a change in educational placement." *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984). Courts addressing the question have overwhelmingly determined that a change in location of services, on its own, is not a fundamental change in the educational program and therefore, not a change in education placement under the IDEA. *See, e.g.*, *T.Y. v. New York City Dept. of Educ.*, 584 F.3d 412, 419-20 (2d Cir. 2009); *A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, 372 F.3d 674, 682 (4th Cir. 2004); *White v. Ascension Parish Bd.*, 343 F.3d 373, 379 (5th Cir. 2003); *D.K.*, 983 F. Supp. 2d at 145 (D.D.C. 2013); *James v. District of Columbia*, 949 F. Supp. 2d 134, 137-38 (D.D.C. 2013); *Johnson v. District of Columbia*, 839 F. Supp. 2d 173, 178 (D.D.C. 2012); *Laster v. District of Columbia*, 394 F. Supp. 2d 60, 64-65 (D.D.C. 2005); *Spilsbury v. District of Columbia*, 307 F. Supp. 2d 22, 26-27 (D.D.C. 2004). Given that a change in the location of services, on its own, does not constitute a change in the educational placement, Plaintiff must demonstrate that there was some other fundamental change in Y.G.'s education program to

prevail in her argument that Y.G.'s transfer from Monroe to High Road constituted a change in educational placement. Determining whether there has been a change in education placement requires examining the child's IEP. *See, e.g.*, *D.K*, 983 F. Supp. 2d at 146.

Upon review of the record and applicable case law, the Court finds that Plaintiff has not met her burden of showing that there was a fundamental change in Y.G.'s education program. First, as the hearing officer determined, there was no fundamental change to Y.G.'s IEP. As noted above, the content of Y.G.'s IEP is the focal point of the inquiry into whether there has been a fundamental change in Y.G.'s education program. *See, e.g.*, *D.K.*, 983 F. Supp. 2d at 146. As of the date of the December 2011 IEP, Y.G.'s then-most recent IEP, the MDT team had not yet determined whether Y.G. would require ESY services. AR at 61.[5] On March 24, 2012, DCPS sent Plaintiff a letter proposing to amend the ESY determination from "not yet determined" to "No," due to the fact that Y.G. was "attend[ing] an 11-month, credit-bearing program at the Monroe School, making ESY unnecessary[.]" *Id.* at 73. Although the hearing officer determined that Y.G.'s IEP was amended on March 24, 2012, *id.* at 6, the record does not indicate whether this proposed amendment was actually incorporated into Y.G.'s revised IEP. In any event, neither the December 2011 IEP nor the amended March 24, 2012 IEP explicitly required that ESY services be provided as part of Y.G's education program. Although it is plausible that ESY services may not have been included in Y.G.'s IEP due to the fact that Monroe's eleven-month program applied to all students, rendering the provision of ESY services unnecessary, the Plaintiff has not provided evidence to show that ESY services were required in order to ensure that Y.G. received a FAPE. Furthermore, if the IEP team determined that ESY services were necessary, there is evidence in the record that ESY services were available at High

---

[5] Although Plaintiff references Y.G.'s April 2011 IEP, which includes a recommendation from Monroe that Y.G. receive ESY services, Pl.'s Reply at 12, the April IEP was later updated by the December 2011 IEP.

Road, *id.* at 373, and Plaintiff provided no evidence to suggest that High Road could not provide those services.[6]

Second, Plaintiff did not present any evidence to show that High Road would be unable to provide Y.G. with access to nonacademic and extracurricular activities in accordance with Y.G.'s IEP. Y.G.'s IEP includes the requirement that she "participate in community service projects to enhance her communication, social and professionalism skills," under the headings "extracurricular activities and community participation." *Id.* at 63-65. Plaintiff asserts that the hearing officer failed to conduct an inquiry into whether Y.G. would have the same opportunities to participate in nonacademic and extracurricular activities at High Road as were available to her at Monroe. Yet, the hearing officer did consider the issue of access to nonacademic and extracurricular activities and determined, as a preliminary matter, that nonacademic and extracurricular activities were not required under Y.G.'s IEP. *Id.* at 10. Although the hearing officer may have erred in this respect, the administrative record shows that High Road is able to provide the services required to implement Y.G.'s IEP, *id.* at 365, and Plaintiff has not provided any evidence to suggest that High Road will *not* be able provide these nonacademic and extracurricular activities listed in the December 2011 IEP. Therefore, Plaintiff fails to carry her burden. Ultimately, the record supports the hearing officer's finding that "[t]here was functionally no difference in the amount of services that Y.G. could receive at each school." *Id.* at 10.

Finally, because there was no change in Y.G.'s educational placement, prior written notice was not required. Federal regulations require parental notification in decisions involving

---

[6] Further, although Plaintiff argues that her witness, educational consultant Kevin Carter, expressed "concern . . . regarding . . . Y.G.'s potential loss of specialized instruction and possibly related services," due to the shortened academic year, Pl.'s Mot. at 9 (citing AR at 226-227), Carter himself acknowledged that Y.G's December 2011 IEP did not require Y.G. to receive ESY services. AR at 227-29.

the student's educational placement. *See* 34 C.F.R. §§ 300.116(a)(1); 300.503; *see also Concerned Parents v. New York City Bd. of Educ.*, 629 F.2d 751, 753-54 (2d Cir. 1980) ("[W]e nonetheless believe that the term 'educational placement' refers only to the general type of educational program in which the child is placed. So construed, the prior notice and hearing requirements of § 1415(b) would not be triggered by a decision, such as that made by the Board in this case, to transfer the special education classes at one regular school to other regular schools in the same district."). As discussed above, Plaintiff did not meet her burden of showing that Y.G.'s transfer from Monroe to High Road constituted a fundamental change in her educational program. Therefore, parental notification was not required because there was no change to Y.G.'s educational placement.

### ii. Plaintiff Fails to Establish that DCPS Violated the September 2010 HOD

Plaintiff argues that DCPS violated the September 2010 HOD by moving Y.G. from Monroe to High Road and that the determination by the hearing officer in November 2012 to the contrary was in error. According to Plaintiff, the September 2010 HOD's statement that, "Nothing in this order requires placement at another non-public placement, unless the IEP team determines that such a placement is necessary for the Student," meant that Y.G. could not be moved from one nonpublic school to another without prior approval from the IEP team. Pl.'s Mot. at 11-12.

In support of her argument, Plaintiff asserts that it was High Road that had difficulties in implementing Y.G.'s IEP, rather than Monroe, as DCPS contends. Plaintiff states that DCPS student progress monitor and LEA representative at Monroe, Candi CdeBaca, testified that High Road was placed on "probationary status" by the Office of State Superintendent of Education (OSSE), *id.* at 13 (citing AR at 375, 397-398), and that Monroe provided OSSE with all the

information it was seeking regarding teaching certifications, and was "awaiting the return of the official certification documents from OSSE." *Id.* (citing AR at 103-04).

Defendant argues that the reassignment of Y.G. to High Road by DCPS was necessary in order to provide Y.G. with a FAPE under the IDEA and that DCPS remained in compliance with the September 2010 HOD. Def.'s Mot. at 13-14. Defendant states that DCPS made the decision to transfer Y.G. from Monroe to High Road after discovering that the teachers at Monroe did not possess the certifications necessary for instructing special education students. *Id.* at 1-2.

Plaintiff has not met her burden of showing that the hearing officer erred in finding that DCPS did not violate the September 2010 HOD when it transferred Y.G. from Monroe to High Road. To begin with, Plaintiff's construction of the September 2010 HOD is wholly inconsistent with the actual text of order. The particular provision -- "Nothing in this order requires placement at another non-public placement, unless the IEP team determines that such a placement is necessary for the Student" -- means simply that there is no requirement that Y.G. be placed at another nonpublic school *unless* the IEP team makes the determination that she should be placed there. The order cannot be accurately construed to mean, as Plaintiff contends, that "[i]f Y.G. neither graduated nor aged out of the Monroe School, per the September 2010 HOD, she was to remain there; however, if another non-public placement was required for Y.G., the September 2010 HOD required her IEP Team to convene," Pl.'s Mot. at 11, or that the "HOD required the District to convene a meeting if placement from one nonpublic [school] to another nonpublic [school] was necessary." Pl.'s Reply at 7. In short, Plaintiff's argument that the September 2010 HOD required the IEP team to convene a meeting before Y.G. could be transferred from one nonpublic school to another nonpublic school is misleading and not at all supported by the language of that order.

Moreover, DCPS did not violate the September 2010 HOD by transferring Y.G. to High Road because, as the hearing officer concluded, Monroe lacked the requisite special education certifications for all teachers and staff. AR at 11, 103-104, 255-258, 287, 351-52, 356-57. Although Plaintiff asserts that the High Road schools were placed on probationary status, Pl.'s Mot. at 13 (citing AR at 375, 397-398), the administrative record does not support Plaintiff's argument. In fact, Ms. Cdebaca testified that although many of the High Road schools were on probationary status for various reasons not described in the administrative record, only *some* of the High Road schools were on probationary status because of issues with teacher certifications. AR at 375. Notably, Ms. Cdebaca testified that the school where Y.G. would be placed possessed the requisite teaching certifications. *Id.* at 364-66, 398; *see id.* at 83 (listing all eleven High Road schools as OSSE-approved nonpublic day schools with certificates of approval to provide services to students with specific learning disabilities).

Finally, the hearing officer correctly concluded that "DCPS, as the local education [sic] agency, is responsible for providing Student with a free appropriate public education," and that the September 2010 HOD provision "exclud[ing] DCPS from participating as a member of the IEP team in the determination of appropriate services and placement for Student[,]" was "inconsistent with the IDEA[.]" *Id.* at 11. Under the IDEA, the LEA is designated as a member of the team responsible for developing the student's IEP. 20 U.S.C. § 1414(d)(1)(B)(iv). Along with that responsibility, "[t]he local educational agency shall ensure that . . . the IEP Team . . . reviews the child's IEP. . . to determine whether the annual goals for the child are being achieved; and . . . revises the IEP as appropriate to address" a student's lack of progress in meeting stated goals, reevaluation results, the "anticipated needs" of the child, and any other issues. *Id.* § 1414(d)(4)(A). Thus, any order impeding the ability of DCPS, as LEA, to

13

participate in the review, modification, and implementation of Y.G.'s IEP as needed to ensure her a FAPE is contrary to the IDEA. *See, e.g.*, *Nelson*, 811 F. Supp. 2d at 512 (finding that the hearing officer's determination was inconsistent with the IDEA where it removed DCPS from participating in the process of revising and implementing the student's IEP).

Furthermore, under the D.C. Municipal Regulations, as the LEA and a member of the IEP team, DCPS is responsible for supervising the provision of services required by Y.G.'s IEP to ensure that Y.G. is provided with a FAPE. The D.C. Municipal Regulations provide that:

> All local education agencies . . . in the District of Columbia shall ensure, pursuant to the Individuals with Disabilities Education Act . . . that all children with disabilities, ages three to twenty-two, who are residents or wards of the District of Columbia, have available to them a free appropriate public education . . . and that the rights of these children and their parents are protected.

D.C. Mun. Regs. tit. 5-E, § 3000; *see also DL v. District of Columbia*, 730 F. Supp. 2d 84, 100 (D.D.C. 2010) ("District law requires the LEA to provide a FAPE to each child with a disability[.]"). Furthermore, to be in compliance with the D.C. Municipal Regulations, the nonpublic school to which Y.G. is assigned must be able to implement Y.G.'s IEP. D.C. Mun. Regs. tit. 38, § 38-2561.03; *see also Johnson*, 839 F. Supp. 2d at 179 (stating that a student cannot be placed at a school that is unable to implement the student's IEP). Therefore, in accordance with the local regulations, DCPS had the legal authority to transfer Y.G.'s location of services to another nonpublic school when it became clear that Monroe was unable to implement Y.G.'s IEP, due to Monroe's failure to comply with the teacher certification requirements. For these reasons, to the extent that the September 2010 HOD effectively removed DCPS from supervising the provision of services mandated by Y.G's IEP, *see* AR at 24, the decision was contrary to the IDEA and D.C. Municipal Regulations, as the hearing officer correctly determined.

## IV. CONCLUSION

Plaintiff has failed to carry her burden of showing that Y.G. was denied a FAPE when DCPS changed Y.G.'s location of services from Monroe to High Road. The administrative record supports the conclusion that Y.G.'s reassignment to High Road was a change in the location of services, rather than a change in educational placement, and thus, DCPS was not required to include Plaintiff in the decision-making process regarding that transfer. Finally, the record supports the hearing officer's determination that DCPS did not violate the September 2010 hearing officer determination by transferring Y.G. from Monroe to High Road. For the foregoing reasons, Plaintiff's Motion for Summary Judgment [13] is DENIED, and Defendant's Motion for Summary Judgment [15] is GRANTED.

September 10, 2014.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE